UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

----------------------------------------------------------x
                            :

SIDHI VINAYAK PETROLEUM, INC.   :           3: 16 CV 1792 (WWE)
                            :

v.                             :

                            :

HESS CORPORATION, et al.     :          DATE: JULY 12, 2019
                            :

----------------------------------------------------------x

## RULING ON PLAINTIFF'S MOTION FOR PROTECTIVE ORDER (DOC. NO. 102) AND DEFENDANTS' CROSS MOTION FOR PROTECTIVE ORDER (DOC. NO. 103)

I.      RELEVANT FACTUAL BACKGROUND

The plaintiff Sidhi Vinayak Petroleum, Inc., a franchisee of defendant Hess Corporation ["Hess"], commenced this litigation on October 31, 2016 (Doc. No. 1), arising out of two transactions: (1) the transfer of the franchise agreements with Hess to defendant Marathon Petroleum Company, LP ["Marathon"] [1] when defendant Hess sold its refinery assets in October 2014; and, (2) the plaintiff's right of first refusal as it applied to defendant Petroleum Marketing Group, Inc.'s ["PMG"] offer to purchase defendant Marathon, made on May 22, 2017.[2]

On May 16, 2019, the plaintiff filed a Motion for Protective Order (Doc. No. 102), and the next day, the defendants Hess, Marathon, and PMG, filed their Cross-Motion for Protective Order,

---

[1]The Court refers herein only to the parties remaining in this action. On February 14, 2018, Ganesh Petroleum, Inc. and Mercury Fuel Service were dismissed on consent as plaintiffs (Doc. No. 58), and on March 18, 2019, defendants Hess Retail Corporation and Speedway LLC were dismissed on consent from the case. (Doc. No. 91).

[2] Specifically, in the Third Amended Complaint, filed on September 26, 2018, the plaintiff asserts a violation of the Connecticut Petroleum Franchise Act, CONN. GEN. STAT. § 42-133l(a) against defendant Marathon (Count One); a violation of the Connecticut Unfair Trade Practices Act, CONN. GEN. STAT. § 42-110b et seq. against defendants Marathon, Hess, and PMG (Count Two); breach of the Dealer Agreement contract between the plaintiff and defendant Hess through defendant Hess's transfers to defendants Marathon and PMG without the plaintiff's consent (Count Three); breach of the covenant of good faith and fair dealing by defendants (Count Four); declaratory relief (Count Five); a violation of the statutory right of refusal or bona fide offer, CONN. GEN. STAT. § 42-133mm (Count Six); a violation of the plaintiff's rights under the Franchise Act, CONN. GEN. STAT. § 42-133f (Count Seven); and, a violation of the Petroleum Marketing Practices Act ["PMPA"], 15 U.S.C. § 2801 et seq. by defendant Marathon (Count Eight).

and opposition to the plaintiff's Motion. (Doc. No. 103). On June 11, 2019, the Court (Eginton, J.) issued an Order finding the Motion for Protective Order moot and granting the Cross Motion for Protective Order. (Doc. No. 106). Following a Motion for Reconsideration filed by the plaintiff (Doc. No. 107), the Court reopened the plaintiff's Motion and the defendants' Cross Motion and referred both to this Magistrate Judge. (Doc. No. 108). On June 18, 2019, the plaintiff filed a brief in opposition to the plaintiff's Cross Motion (Doc. No. 111), and on July 2, 2019, the defendants filed their reply brief. (Doc. No. 114).

For the reasons set forth below, the plaintiff's Motion for Protective Order (Doc. No. 102) is *denied*, and the defendants' Cross Motion for Protective Order (Doc. No. 103) is *granted*.

## II.     DISCUSSION

Both parties have submitted proposed Protective Orders governing the information, documents, and other materials produced during discovery in this action. Protecting the privacy of proprietary information is the legitimate purpose of a protective order, and it is undisputed in this case that a protective order is appropriate and necessary to govern the exchange of confidential and proprietary business information to be disclosed in discovery. *See Burgess v. Town of Wallingford*, No. 3:11 CV 1129(CSH), 2012 WL 4344194, at *9 n.17 (D. Conn. Sept. 21, 2012) ("Absent a protective order, 'the discovery rules place no [specific] limitations on what a party may do with materials obtained during discovery.'") (quoting 23 Am. Jur. 2d Depositions and Discovery § 167 (Westlaw update Aug. 2012)). As the United States Supreme Court has explained, "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required[,]" *Seattle Times Co v. Rhinehart*, 467 U.S. 20, 36, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984), and it is this "degree of protection" that is at issue in the underlying motions.

The proposed orders differ in their restriction on the use of the designated materials, the procedure for challenging designations, and the process for sealing designated material filed with the Court. In addition, the plaintiff's Proposed Protective Order does not include language that the filing of pleadings or other papers disclosing or containing designated material does not waive the designated status of the material, or language that the Court will determine how that material will be treated during trial and other proceedings. (*Compare* Doc. No. 102, at 3 ¶¶ 5, 12, 14 *with* Doc. 103, Ex. A ¶¶ 5, 12, 14, 15).

A.    USE RESTRICTION

The defendants argue that the plaintiff's proposed order is "fundamentally improper and deficient" in that there is no prohibition on the use of confidential information. (Doc. No. 103 at 2). The defendants' Proposed Protective Order, identical to the Standing Protective Order used by many of the district judges in this district,[3] states that material designated as confidential under the protective order "shall not be *used* or disclosed for any purpose other than the litigation of this action and may be disclosed only" in a stated manner, whereas, the plaintiff's Proposed Protective Order states that designated material "shall not be disclosed for any purpose other than the litigation and may be disclosed only" in the stated manner. (*Compare* Doc. No. 102, at 2 ¶ 5 *with* Doc. No. 103, Ex. A ¶ 5). Counsel for the plaintiff argues that counsel, or their respective firms, "have had the same dispute over the word 'use' for perhaps twenty years[]"[4] and that counsel's "future compliance with the order could constitute a blatant violation of [Rule 5.6 of the] Rules of

---

[3] The following district judges use the Standing Protective Order that the defendants propose: the Honorable Victor A. Bolden, the Honorable Robert N. Chatigny, the Honorable Janet C. Hall, the Honorable Jeffrey A. Meyer, the Honorable Michael P. Shea, and the Honorable Stefan R. Underhill.

[4] Although the plaintiff's counsel refers to this on-going dispute between counsel, the plaintiff does not cite to any cases involving these attorneys in which this issue was argued, nor could the Court locate any ruling on this issue involving these attorneys.

Professional Conduct[]" which prohibits restrictions on a lawyer's right to practice. (Doc. No. 111 at 2).

In response, the defendants argue that the plaintiff's position is "wrong on all fronts[]" as the "[m]ere access to information via the discovery process does not give one the right to appropriate that information for its own use[,]" and that, if the plaintiff and its counsel were allowed "to assume dominion over the defendants' confidential and proprietary information simply because the plaintiff has served discovery in this lawsuit," Rule 26(c) would be "defeated," and the defendants "would be forced to scrutinize all of their discovery compliance with the goal of maximizing the protection of their confidential and proprietary information." (Doc. No. 114, at 4-5) (citation omitted). The Court agrees with the defendants.

First, as the defendants note appropriately, the plaintiff mis-cites Rule 5.6 of the Connecticut Rules of Professional Conduct. Rule 5.6(2) reads, "A lawyer shall not participate in offering or making . . . [a]n agreement in which a restriction on the lawyer's right to practice *is part of the settlement of a client controversy*." CONN. RULES OF PROF'L CONDUCT r. 5.6(2) (emphasis added). Similarly, Model Rule of Professional Conduct 5.6(b) provides: "A lawyer shall not participate in offering or making an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a client controversy." MODEL RULES OF PROF'L CONDUCT r. 5.6(b) (9th Ed. 2019). Moreover, ABA Formal Opinion 00-417 explains that:

> Rule 5.6(b) applies only to restrictions imposed as part of a settlement of a controversy. Thus, the rule and this opinion have no application to agreements restricting the use of information where the agreement is entered into as a condition of receiving the information. *Nor does the rule apply to protective orders imposed during litigation*.

(Doc. No. 114, Ex. A n.4) (emphasis added). This case does not involve a settlement of a client controversy. Thus, this Rule of Professional Conduct is inapplicable to the protective order at issue.

Next, the plaintiff argues that similar use restrictions have been used as the predicate for attempts to disqualify counsel from subsequent litigation, and "[p]erhaps worse than disqualification, producing parties also sought contempt orders against opposing counsel in similar circumstances." (Doc. No. 111 at 2-3) (citing *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693 (9th Cir. 1993); *Streck Inc. v. Res. and Diagnostic Sys.*, 250 F.R.D. 426 (D. Neb. 2008); *Hu-Friedy Mfg. Co., Inc. v. General Elec. Co.*, No. 99 C 0762, 1999 WL 528545 (N.D. Ill. Jul. 19, 1999)). However, the cases upon which the plaintiff relies do not support the plaintiff's position. In fact, in none of the cases relied on by the plaintiff did the court conclude that the "use" restriction gave rise to a contempt finding, that a "use" restriction violated ethical rules, or that the "use" restriction improperly restricted counsel's ability to practice.

In *Hu-Friedy Mfg.*, 1999 WL 528545, at \*1, Hu-Friedy brought a fraud action against General Electric arising out of General Electric's marketing of plastic ULTEM resin. Hu-Friedy's counsel who represented another party, Chevron Chemical Company ["Chevron"], against General Electric before bringing Hu-Friedy's case, entered into a protective order in the Chevron case that provided that all confidential materials would "be used and disclosed solely for purposes of the preparation and trial of [the] case and [would] not be used or disclosed for any other purpose." *Id.* In connection with the settlement of the Chevron case, those parties also entered into a cooperation agreement that provided that the confidential materials would "be used by the Parties and their Counsel solely for the purpose of securing, advancing, and supplying legal representation to the Parties with respect to Covered Claims." *Id.* General Electric argued that the plaintiff's counsel "impermissibly [sought] to exploit an unfair advantage . . . by using confidential information disclosed" to the plaintiff's counsel in the Chevron case. *Id.* The court found that General Electric's "strained reading of the word 'use' in the protective order and cooperation agreement"

would prevent the plaintiff's counsel's representation of anyone with related claims against General Electric and would contravene ethical rules that prohibit lawyers from making agreements in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between the parties. *Id.* at 2-3. General Electric's interpretation of the "use" restriction is the same interpretation posited by the plaintiff in this case. The court in *Hu-Friedy*, however, disagreed with General Electric's interpretation of the "use" restriction in that protective order, referred to General Electric's argument as "unimpressive," and held that there is "no *unfair* advantage" due to Hu-Friedy's counsel's "previous exposure to the confidential information[,]" and that "any merit it might have is far outweighed by the policy of avoiding unnecessary and unworkable restrictions on the practice of law." *Id.* (emphasis in original).  The holding of that case, therefore, does not support the plaintiff's argument in this case.

In *Streck Inc.*, 250 F.R.D. at 434, the defendant sought sanctions against the plaintiff for its "use" of protected documents in a subsequent action. In that case, the defendant "used" the documents to compel discovery and to draft a statement of facts in the other action. *Id.*  The court, concluding that the plaintiff's knowledge and reference to the documents in the other action was "insufficient . . . to constitute a violation of a protective order[,]" declined to impose sanctions. *Id.* at 435.  Thus, the court's holding that a "use" restriction is not violated when counsel relies on the protected information in subsequent litigation does not support the plaintiff's argument in this case that such a "use" restriction would prevent counsel from taking related cases in the future because of counsel's knowledge of the protected information.

Additionally, the plaintiff misconstrues the holding of *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d at 695, in its argument that use restrictions would prevent a lawyer from ever doing "similar legal work again."  (Doc. No. 111 at 3).  To the contrary, the

Ninth Circuit explained that the plaintiff in that case, who was accused of violating the protective order's "use" restriction, did not violate the protective order by using information that, admittedly, "it would not have discovered so easily[,]" as the plaintiff "went to great lengths to avoid revealing in public filings anything it had learned in discovery[.]" *Id.* The court explained that,"[b]ecause [the plaintiff's] lawyers cannot achieve total amnesia[,]" their subsequent work in antitrust litigation against the defendants . . . would be informed by what they learned during the discovery [in the earlier] suit[,]" and any order with such use restrictions, "if taken literally," would be "absurd[]" because it would require that "lawyers who learn from and use their experience obtained in discovery under such an order would have to change fields, and never do antitrust work again, lest they 'use' what they learned in a prior case[.]" *Id.* Thus, the court concluded that "[f]or the protective order to comply with common sense, a reasonable reading must connect its prohibitions to its purpose—protection against disclosure of commercial secrets." *Id.* The court held that the plaintiff's use of discovery from the first lawsuit in the second lawsuit, "substantially complied with a reasonable interpretation of the protective order[,]" and thus, declined to hold the plaintiff in contempt. *Id.*

Moreover, to the extent that the plaintiff relies on these cases for the general proposition that, when a protective order exists, a party may move for sanctions or contempt for violations of that order, the mere fact of an enforcement proceeding when a party violates the terms of a protective order does not give rise to a finding that the terms of a protective order cannot stand. Consistent with the foregoing case law and the Standing Protective Orders used by many of the district judges in this district, which include identical language governing use, this Court concludes that the use provision included in the defendants' Proposed Protective Order is appropriate.

B.    REMAINING PROVISIONS

In paragraph twelve, the plaintiff's Proposed Protective Order reduces from fifteen days to ten days the length of time to consult with an opposing party who contests a confidentiality designation. (Doc. No. 111 at 5).  Although the plaintiff argues that fifteen days will cause significant delay in the movement of this case, the fifteen-day dispute resolution timeframe is standard in the Standing Protective Orders used in this district, and the Court finds no strong countervailing interest in reducing this timeframe.  Additionally, the Court notes that, despite Rule 26(c)'s requirement for counsel to confer in good faith prior to filing a motion for a protective order, and for counsel to include a certification that such efforts were made, the plaintiff's counsel did not include such a certification in his underlying motion.  The Court reminds counsel of the importance of the obligation to confer in good faith in discovery, and specifically, regarding the designations governed by this Protective Order.

The plaintiff next argues that the procedure it sets out in paragraph fourteen of its proposed protective order "merely sets out a reasonable procedure to give the designating party notice of an intent to file confidential documents with the Court[]" (Doc. No. 111 at 5-6). The plaintiff's proposed language, however, deviates from the sealing procedures set forth under Local Rule 5(e). The proposed language from the defendants, which differs from the plaintiff's language in that it specifies that documents must be sealed in the manner set forth in the Local Rules, is appropriate and is identical to the language in the Standing Protective Order used in this district.

Moreover, the plaintiff's Proposed Protective Order does not include what is in the defendants' paragraph fifteen, which reads: "Filing pleadings or other papers disclosing or containing Designated Material does not waive the designated status of the material.  The Court will determine how Designated Material will be treated during trial and other proceedings as it

deems appropriate." The plaintiff deletes this paragraph because the paragraph "merely reflects a fact. If a document is publicly filed, it is public." (Doc. No. 111 at 6). The defendants argue that the deletion of this paragraph is important as paragraph fifteen "provides crucial limitations on the waiver" of designated material. (Doc. No. 103 at 4). The defendants also acknowledge that, had the parties conferred prior to the filing of the plaintiff's motion, the defendant "likely would have been willing to accommodate some of the plaintiff's concerns[.]" (Doc. No. 114 at 10). The issue of waiver is significant, and the omission of paragraph fifteen omits any protections for the waiver of confidentiality. This provision is included in the Standing Protective Order utilized in this district and shall apply in this case.

III.    CONCLUSION

Accordingly, this Court concludes that the plaintiff's Motion for Protective Order (Doc. No. 102) must be *denied*, and the defendants' Cross Motion for Protective Order (Doc. No. 103) is *granted*.[5]  The defendants shall submit their Proposed Protective Order for this Court's signature.

This is not a Recommended Ruling. This Ruling is reviewable pursuant to the "clearly erroneous" statutory standard of review. *See* 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a); and D. CONN. L. CIV. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon timely made objection.

Dated at New Haven, Connecticut, this 12th day of July, 2019.

                                                      /s/ Robert M. Spector
                                                      Robert M. Spector
                                                      United States Magistrate Judge

---

[5] If the parties believe that a settlement conference would be productive, they should contact Chambers.